UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION

KENYON RAHEEN GADSDEN,

    Petitioner,

    -vs-

JOHN FANELLO,
Warden, USP Allenwood,
    Respondent.

1: CV-01-1122

\* Civil No.

\*

\* Crim Nos.96-CR-182

\* From the District Court
For the Eastern District
\* of Virginia

\* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE AND MODIFY
PETITIONER'S SENTENCE PURSUANT TO 28 U.S.C. SECTION 2241**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

As a matter of introduction, the Petitioner respectfully

submits that the events which transpired in the instant case

constitute a denial of the Petitioner's Due Process rights, as

guaranteed by the 5th Amendment of the United States Constitution

and a denial of his Sixth Amendment rights.  In short, the

Petitioner contends that his  sentence in the instant case should

be vacated due to an intervening change in the law.  Further such

errors were not merely procedural, but substantially infringed

upon the Petitioner's constitutional right to due process of law.

**FILED
HARRISBURG**

JUN 2 2 2001

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

## STATEMENT OF ISSUES UNDER CONSIDERATION

Petitioner respectfully requests that this Court adjudicate the following issues of law, to wit:

1. Whether the Petitioner's claims are properly raised in a motion pursuant to 28 U.S.C. § 2241?

2. Whether the Petitioner's sentence and should be vacated in light of Apprendi?

## I. The Petitioner's claims are properly raised in a motion pursuant to 28 U.S.C. § 2241

The Petitioner contends that his claims are properly raised in a motion pursuant to 28 U.S.C. § 2241. Generally, a federal prisoner must file a motion pursuant to 28 U.S.C. §2255 to challenge his conviction or sentence. Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir.) *cert. denied* 488 U.S. 982 (1988). A §2255 motion is the appropriate remedy for violations that occur at or prior to the time of sentencing. Id. A petition pursuant to 28 U.S.C. §2241 is generally used to challenge the execution of an individual's sentence. Id.; See also United States v. Mittelsteadt, 790 F.2d 39, 40-41 (7th Cir. 1986)(habeas corpus proceeding pursuant to §2241 is the proper remedy for challenging information in the PSI). A §2241 petition is also appropriate if "it also appears that the remedy by (§2255) motion is inadequate or ineffective to test the legality of his detention. Id.; United States v. Pirro, 104 F.3d 297 (9th Cir. 1997)(holding that delay in considering a §2255 motion caused by a pending appeal is not sufficient to make the §2255 inadequate or ineffective); See also Tripati, 843 F.2d at 1162-63 (§2255 motion was not inadequate or ineffective merely because the sentencing court

3

denied relief on the merits); <u>Estep v. United States</u>, 316 F.2d

767, 769 (9th Cir. 1963)(movant's unspecified fears of unequal

treatment by the sentencing courts did not render §2255 motion

inadequate); <u>Stirone v. Markley</u>, 345 F.2d 473, 475 (7th Cir.

1963)(suggesting that a §2255 remedy might be ineffective where

the sentencing court refuses to hear a §2255 petition altogether

or where the court delays in hearing the petition inordinately).

Although there is no clear definition of what constitutes

inadequate or ineffective, the Second Circuit held in <u>Triestman</u>

that "inadequate or ineffective" means "at least cases where the

petitioner cannot utilize §2255 and in which failure to allow for

collateral review would raise serious constitutional questions."

<u>See</u> <u>United States v. Triestman</u>, 124 F.3d 361 (2nd Cir. 1997). In

<u>Triestman</u>, the Second Circuit held that the defendant could raise

a claim of actual innocence to a 924(c) charge by means of a

motion pursuant to 28 U.S.C. §2241.

In the instant case, the Petitioner contends that 28 U.S.C. §

2255 provides an inadequate remedy.  The Petitioner has never

previously filed a petition pursuant to 28 U.S.C. § 2255.

However, over one year has elapsed since his conviction became

final.  Therefore unlike the remedy available for successive §

2255 litigants in the event of a new rule of law, those who have

never filed a § 2255 motion are left without clear direction of

how to proceed. Thus, the only avenue in which the Petitioner can

4

move to vacate his conviction and sentence in light of new rules
of constitutional law is § 2241.

To date no Circuit Courts have applied the decision in
Apprendi retroactively.  However, the Petitioner respectfully
disagrees with the decisions of the Circuits regarding
retroactivity.  In fact, the Petitioner would argue that the
Supreme Court has in fact ruled on the retroactive application of
Apprendi. On two occasions since deciding Apprendi, the U.S.
Supreme Court has remanded cases in light of Apprendi, cases that
were on collateral review.  See Wims v. United States, 121 S.Ct.
32, 148 L.Ed.2d 3, 00 Cal. Daily Op. Serv. 8091 (Oct. 2, 2000);
Smith v. United States, 121 S.Ct. 336, 148 L.Ed.2d 270, 69 USLW
3268, 00 Cal. Daily Op. Serv. 8407 (Oct. 16, 2000).  Because the
High Court remanded these cases for application of Apprendi, and
specifically because these cases were on collateral review, it
appears that the Supreme Court has already found Apprendi to be
retroactively applicable.

If this is the case, the 28 U.S.C. § 2244 would dictate that
the Petitioner would have one year from the date of the new rule
of law to seek relief.  This would mean one year from the date
Apprendi was decided.  However, since the local courts have
denied and ignored the Supreme Court's application of Apprendi,
the Petitioner must seek to preserve his right to contest these
errors as they have occurred in his case, pending additional

5

clarification and enforcement by the Supreme Court. *See generally*, <u>United States v. Moss</u>, 2001 WL 637312, *6 (8th Cir. 2001) and <u>United States v. Smith</u>, 2001 WL 483361 (7th Cir. 2001) Therefore this instant petition pursuant to 28 U.S.C. § 2241 is now the appropriate manner in which to contest the erroneous and unlawful sentence. <u>See</u> <u>Harris v. United States</u>, __ F.Supp.2d __, 2000 WL 1641073, (D.N.J. Nov. 1, 2000)(holding that a motion pursuant to 28 U.S.C. § 2241 is the appropriate means for raising an issue based on the <u>Apprendi</u> decision in a case where the defendant had previously filed a § 2255 motion).

## II. THE PETITIONER'S SENTENCE SHOULD BE VACATED IN LIGHT OF <u>APPRENDI</u>.

The Petitioner's arguments in this matter turn upon a recent U.S. Supreme Court case, <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348 (2000). To summarize, that case and its progeny have changed the face of criminal law by providing that when the government seeks enhanced penalties based upon drug quantities, the quantity must be alleged in the indictment and submitted to a jury for a finding of proof beyond a reasonable doubt. In other words, under particular circumstances, drug quantity is an element of the offense, and that element must be conveyed to a defendant through the indictment. <u>Id</u>. at 2362-63.

This new line of reasoning completely changed the

6

interpretation of many federal crimes, including drug laws.
While _Apprendi_ involved a New Jersey hate crime statute, it is
clear that its broad constitutional principles implicate the
federal drug statutes.  *See* _Apprendi_, (explicitly describing its
holding as constitutionally based), and subsequent remands and
circuit court cases.

At issue in _Apprendi_ were two New Jersey statutes, one which
classified possession of a firearm for an unlawful purpose as
"second degree" offense warranting a five to ten year sentence
and the other called the "hate crime law" which provides for an
extended term of imprisonment if the trial judge finds that the
defendant acted with a purpose to intimidate an individual or
group of individuals due to race, color, gender, etc.  _Apprendi_,
120 S.Ct. at 2351, *citing* N.J. Stat. Ann. § 2C:39-4(a)(West 1995); N.J.
Stat. Ann. § 2C:44-3(e)(West Supp. 2000).  In determining that the New
Jersey procedure was unconstitutional, the United States Supreme
Court analyzed the history of criminal law and decisions
involving proof of all elements of a crime beyond a reasonable
doubt.  "At stake in this case are constitutional questions of
surpassing importance:  the proscription of any deprivation of
liberty without due process of law, Amdt. 14, and the guarantee
that [i]n all criminal prosecutions, the accused shall enjoy the
right to a speedy and public trial, by an impartial jury, Amdt.
6."  _Id_. at 2355 (internal quoted omitted).  These rights entitle

a criminal defendant to a determination by the jury that he is

guilty of every element of the crime charged beyond a reasonable

doubt.  Id.

> In sum, our reexamination of our cases in this
> area, and of the history upon which they rely,
> confirms the opinion that we expressed in Jones.
> Other than the fact of a prior conviction, any fact
> that increases the penalty for a crime beyond the
> prescribed statutory maximum must be submitted to a
> jury, and proved beyond a reasonable doubt.  With
> that exception, we endorse the rule set forth in
> the concurring opinions in that case:  "[I]t is
> unconstitutional for a legislature to remove from
> the jury the assessment of facts that increase the
> prescribed range of penalties to which a criminal
> defendant is exposed.  It is equally clear that
> such facts must be established by proof beyond a
> reasonable doubt."

Id. at 2362-63 (internal citations omitted) (quoting Jones v.

United States, 526 U.S. 227, 252-53, 119 S.Ct. 1215, 1228-29

(1999)).

In light of the constitutional rule set forth in Apprendi,

the U.S. Supreme Court found that the state hate crime statute

that authorized an increase in a defendant's maximum sentence

based only a judge's finding by a preponderance of the evidence

standard that the defendant acted with a purpose to intimidate

the victim based on race, violated the due process clause of the

U.S. Constitution.  "The New Jersey procedure challenged in this

case is an unacceptable departure from the jury tradition that is

an indispensable part of our criminal justice system."  Id. at

8

2366-67.  Accordingly, the Court reversed the decision of the New Jersey Supreme Court.  Id.

Simply stated, Apprendi adopts the position that "it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.  It is equally clear that such facts must be established by proof beyond a reasonable doubt."  Apprendi, at 2362-63, quoting Jones v. United States, 526 U.S. 227, 252-53, 119 S.Ct. 1215, 1228-29 (1999) (Stevens, J. concurring), and citing id. at 253, 119 S.Ct. at 1229 (Scalia, J. concurring).  Therefore, Apprendi clearly mandates that any element that serves to increase a penalty for a crime beyond the statutory maximum must be submitted to the jury and proven beyond a reasonable doubt.

One such element is quantity of drugs.  The quantity of drugs must be submitted to a jury for a finding of proof beyond reasonable doubt if the enhanced penalties are obtained under 21 U.S.C. § 841(b)(1)(A) or (B).  United States v. Angle, 230 F.3d 113, 121 (4th Cir.2000); United States v. Doggett, 230 F.3d 160, 165 (5th Cir. 2000); United States v. Rebmann, 226 F.3d 521, 524 (6th Cir. 2000); United States v. Nance, 2000 WL 1880629, *3 (7th Cir. Dec. 29, 2000); United States v. Aguayo-Delgado, 220 F.3d 926, 931 (8th Cir. 2000); United States v. Norby, 225 F.3d 1053, 1056 (9th Cir. 2000); United States v. Rogers, 228 F.3d 1318,

9

1326-28 (11th Cir.2000).

Apprendi applies in the present case in four respects.
First, it applies to render Petitioner's plea null and void,
since he was unaware of the existence of that element of the
offense--the amount of drugs involved--and that the government
would have to prove that element if he went to trial.  Second,
Apprendi demonstrates that the indictment naming Petitioner was
fatally defective, since it did not give notice of the elements
of the offense or, more importantly, properly allege the elements
of the crime charged.  As a result, the indictment must be
dismissed, and as the district court lacked jurisdiction to
proceed against Petitioner, the conviction must also be vacated.

Third, Apprendi demonstrates that as an element of the
offense, drug amount should have been reviewed by the district
court before accepting Petitioner's plea.  Because the district
court violated Rule 11, the plea and conviction must be vacated.

Fourth, Apprendi establishes that  it is unconstitutional
for a legislature to remove from the jury the assessment of facts
that increases the prescribed range of penalties to which a
criminal defendant is exposed.  Because § 841(a)(1), the section
upon which the government and district court relied in sentencing
Petitioner for a § 846 violation, does exactly that, it must be
deemed unconstitutional as written, and Petitioner's conviction
must be vacated.

A.    **PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED, AS HE
ENTERED A GUILTY PLEA UNKNOWINGLY AND UNINTELLIGENTLY.**

Petitioner's conviction in this case, must be vacated.  He pled
guilty to what amounted to a general indictment, since the indictment
did not allege what amounts of drugs were involved.  Because at the ti
Petitioner did not know these important facts, his plea was entered
unknowingly and unintelligently.  A guilty plea must be made knowingly
voluntarily, and intelligently.  Boykin v. Alabama, 395 U.S. 238 (1969
See Bryant v. Cherry, 687 F.2d 48 (4th Cir.1982), cert. denied 459
U.S.1073.  In order to plead voluntarily, a defendant must know the
direct consequences of his plea, including the actual value of any
commitments made. Mabry v. Johnson 104 S.Ct. 2543, 2547 (1984).

The Supreme Court has ruled that a plea must be found to be
involuntary if it was based upon promises or threats which deprived it
of a voluntary character.  Machibroda v. United States, 368 U.S. 487,
493 (1962). "The validity of a guilty plea hinges on whether it was a
voluntary and intelligent choice among alternative courses of action
open to the defendant." Banks v. United States, 920 F.Supp. 688
(E.D.Va.1996).

When looking at whether or not a plea should be set aside, three
areas of the plea negotiation should be evaluated.  This test was set
forth in the case of United States v. Ribas-Dominicci, 50 F.3d 76 (1st
Cir. 1995).  According to that court, "violations of any of the three

11

core concerns--absence of coercion, understanding of the charges, and
knowledge of the consequences of the guilty plea--mandate that the ple
be set aside." Id. at 78. The second factor, understanding of the
charges, mandates reversal of the conviction in the present case.
Petitioner did not have a full understanding of the charges, since an
element of the offense was never listed in the indictment, mentioned a
the time of the plea, or addressed at sentencing. As noted above,
Petitioner did not know the existence of an element of the offense for
which he was charged, or that if he went to trial the United States
would have to prove drug amount beyond a reasonable doubt.

In sum, the amount of drugs involved was an element of the offens
and Petitioner did not have that information. He was never notified c
this element, as the indictment did not list it, and he was not inform
of this element when the "nature of the charge" was reviewed before he
pleaded guilty. Petitioner entered into the plea agreement under a fal
assumption regarding the Government's burden of proof on the drug amou
involved.

Further, a sentence in accordance with the indictment in this cas
an indictment charging no specific amount, would have to be imposed in
accordance with the lowest statutory maximum sentence. This would hav
put an upper limit on the Petitioner's sentence of 20 years, despite t
numerous guideline enhancements.

Therefore, Petitioner pleaded guilty unknowingly and involuntaril
and cannot be held to the plea; the subsequent sentence or any amount

drugs attributed to his not proven to a jury beyond a reasonable doubt.

Consequently, Petitioner's plea agreement must be set aside.

**B.   THE HOLDINGS OF APPRENDI SHOULD BE APPLIED TO THE**

**DETERMINATION OF THE PETITIONER'S GUIDELINE RANGE.**

Justice and fairness also require that the holdings of

Apprendi be applied not only to sentence increases in statutory schemes

to *all methods of sentence increases*, including the Federal Sentencing

Guidelines.  Thus, any sentencing guideline section or application that

serves to increase a sentence, like an element, must be proved to a jury

beyond a reasonable doubt. The Petitioner's guideline range, determined

primarily on drug quantity, but also greatly enhanced by Guideline

calculations, must be recalculated.

Justice O'Connor, in her Apprendi dissent, suggested that the

broadness of the majority opinion might allow for the principles to

apply to the sentencing guidelines:  "The principle thus would apply *

* to all determinate-sentencing schemes in which the length of a

defendant's sentence within the statutory range turns on specific

factual determination (e.g., the federal Sentencing Guidelines)."

Apprendi, 120 S.Ct. at 2393-94 (O'Connor, J., dissenting).

> Viewed through the lens of the separate opinions of
> Justices Scalia, Thomas, O'Conner, and Breyer, Apprendi's
> implications for the legitimacy of a variety of sentencing
> schemes, including the United States Sentencing Guidelines,
> have stirred enormous controversy. * * * Justice Thomas's
> concurrence argued that any fact that alters the range of
> punishments to which a defendant is exposed must be found by a
> jury, acknowledging that his proposed rule might invalidate
> the Sentencing Guidelines themselves. Justice Scalia's
> concurrence maintained that "all the facts which must exist in

13

order to subject the defendant to a legally prescribed
punishment must be found by the jury."  Justice O'Conner's
dissent expressed concern that the Court's holding "will have
the effect of invalidating significant sentencing reform
accomplished over the past three decades."  And Justice
Breyer, a key figure in the development of the Sentencing
Guidelines, lamented that "the rationale that underlies the
Court's rule suggests a principle * * * that, unless
restricted, threatens the workability of every criminal
justice system (if applied to judges) or threatens efforts to
make those systems more uniform, hence more fair (if applied
to [sentencing] commissions.

United States v. Mack, 229 F.3d 226, 236-237 (3rd Cir. 2000) (Becker,

C.J., concurring) (citations omitted).  "The Court did not cite Mistretta v.

United States, the case that originally upheld the constitutionality of the

Sentencing Guidelines."  Id.

In United States v. Harris, 2001 U.S. App. LEXIS 1189; 2001 FED

App. 0030P (6th Cir.), Judge Merritt wrote in dissent as follows:

I write to point out the injustice inherent in
sentencing a defendant charged with second degree murder
using the first degree murder guidelines. Perhaps this
sentencing decision is consistent with the letter of
Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147
L. Ed. 2d 435 (2000), because it does not sentence the
defendants to terms of imprisonment in excess of the
statutory maximum, nor does it alter the range of penalties
to which the defendants are exposed. But * * * the
fundamental basis of our decision in the instant case are
clearly contrary to the spirit of Apprendi, which says that
factual issues having a significant impact on the
defendant's sentence should be charged in the indictment and
proved to a jury beyond a reasonable doubt.  The Apprendi
approach seems to me to disfavor the current judicial and
prosecutorial practice of not giving notice by indictment of
the real crime at issue and of leaving most of the more
salient factual disputes for the sentencing hearing, where
the burden of proof is the less rigorous "preponderance of
the evidence" standard and the hearsay rules do not apply.
Following the logic of Apprendi, the government should not
have been able to cure its charging error simply by
convincing a judge outside the normal rules of evidence that

14

the preponderance of the evidence indicated that [the
defendants] committed first degree murder. This is
consistent with my longstanding belief that the Sentencing
Guidelines – as interpreted in * * * our previous cases –
violate the Due Process Clause.  See, e.g., <u>United States v.
Davern</u>, 970 F.2d 1490, 1500 (6th Cir. 1992) (*en banc*).


   <u>Id</u>. at 5-6.

The opinions of the dissenters noted above have now been adopted

by justices in the majority in some courts.  Recently, the District of

Columbia Circuit addressed whether a district court's enhancement of a

defendant's sentence by four levels for his leadership role in various

roles was improper in light of <u>Apprendi</u>.  <u>United States v. Fields</u>,

2001 WL 241804 (D.C.Cir., March 13, 2001).  The probation office's

presentence investigation report recommended a four-level increase in

the defendant's guideline range based upon guideline § 3B1.1(a)

because the defendant was alleged to be an organizer or leader of

criminal activity that involved five or more participants.  <u>Id</u>. at *5.

Defendant argued that, because the jury did not render a verdict on

the issue of a leadership role, the enhancement was improper in light

of <u>Apprendi</u>.  <u>Id</u>.  The D.C. Circuit agreed:

   Because the fact of leadership role may increase a
   defendant's sentence beyond the prescribed statutory
   maximum, <u>Apprendi</u> applies.  Accordingly, the issue of
   leadership must be charged in an indictment, submitted
   to a jury, and proved beyond a reasonable doubt.


   <u>Id</u>.

Although the <u>Fields</u> Court went on to review the claim for plain

error and found none, the holding is incredibly significant

15

nonetheless.   The D.C. Circuit finding provides that a sentencing
enhancement is subject to the <u>Apprendi</u> rule.   Petitioner urges this
court to find similarly.   The Guidelines enhancements applied to the
Petitioner were not submitted to a jury for  special verdicts, nor
where the alleged in the indictment.   Instead, the Government
concealed the full ramifications from the guidelines to induce a plea
in a situation where the defendant had absolutely nothing to lose by
going to trial.

          This approach is also supported by the recent decision in
<u>United States v. Norris</u>, 2001 WL 431717 (E.D.N.Y., April 27, 2001):

> [S]ince the Supreme Court handed down <u>Apprendi</u> it has
> granted certiorari in some forty cases, twenty six of them
> federal drug cases in which the circuit courts approved
> Guideline sentence increased based not on jury verdicts but
> on a judge's findings by a preponderance of the evidence.
> The Supreme Court vacated the circuit court judgments, and
> remanded for further consideration in the light of <u>Apprendi</u>.
>
> The Supreme Court's decisions making these remands
> indicated clearly that the reasoning of the <u>Apprendi</u>
> decision is not to be restricted to instances where the
> sentence enhancement will cause a sentence to exceed the
> statutory maximum.   In many of the drug cases remanded the
> judges [had] imposed sentences that did not exceed the
> maximum fixed in the statute.
>
> A representative sample of the twenty-six drug cases
> remanded includes cases where the quantity of drugs, the
> defendant's managerial role in a conspiracy, or possession
> of a firearm where "sentencing factors" found by a district
> judge by a preponderance of the evidence. * * *
>
> In this court's opinion the circuit court decision take
> out of context the language in <u>Apprendi</u> that any fact "that
> increases the penalty for a crime *beyond the prescribed*
> *statutory maximum* must be submitted to a jury, and proved
> beyond a reasonable doubt."   120 S.Ct. at 2363 (emphasis
> supplied).   Plainly that is not the only circumstance where

16

an increase in penalty must be submitted to a jury.

       * * *

The enhancement in the New Jersey "hate crime" statute [at issue in Apprendi] is comparable to the Federal Guidelines for threatening or harassing communications (Guideline 2A6.1) and for threatening to assault with a firearm (Guideline 2A2.2). Like a district judge following the Guideline enhancements, the trial judge in New Jersey could increase the sentence based on the judge's own findings by a preponderance of the evidence.

       * * *

A defendant's Constitutional rights would not be so violated by a sentencing guidelines system in which all facts exposing the defendant to a particular sentence range must be included in the indictment and found by a jury to have been proven beyond a reasonable doubt. No doubt such a system would be inconvenient. But compromises for the sake of convenience should not be made at the expense of depriving [Petitioner] of his rights guaranteed by the United States Constitution.

Id. at 2001 WL 431717, *5 (some citations omitted) (emphasis supplied). The same principles of the Norris case apply in this case. Petitioner received a sentence based upon facts not alleged in the indictment or submitted to the jury for a specific finding. In sum, because the sentencing guideline range for the amount of drugs alleged is not specifically charged in the indictment, nor admitted, or proved to a jury beyond a reasonable doubt, the sentence must be vacated. When the sentence is recalculated, no enhancement should be given based upon any guideline factor that was not admitted or submitted to the jury and proved beyond a reasonable doubt.

## CONCLUSION

The Petitioner respectfully prays that this court issue an

17

order vacating his sentence imposed because of a violation of

Petitioner's Due Process rights and a denial of his Sixth Amendment

right to effective assistance of counsel.


Respectfully Submitted,

Robert A. Ratliff
Attorney for Petitioner
11331 Grooms Road, Suite 2000
Cincinnati, Ohio 45242
(513) 469-7444

18